2003 ND 111

**STATE of North Dakota, Plaintiff
and Appellee,**

v.

**Charles E. DIMMITT, Defendant
and Appellant.**

**No. 20030018.**

Supreme Court of North Dakota.

July 16, 2003.

John P. Van Grinsven, III, State's Attorney, Minot, N.D., for plaintiff and appellee.

Faron E. Terry, Minot, N.D., for defendant and appellant.

NEUMANN, Justice.

[¶ 1]   Charles Edwin Dimmitt appealed from a district court order denying his motion to withdraw his guilty plea to the offense of gross sexual imposition. We hold the district court violated N.D.R.Crim.P. 11(d)(1) by participating in plea negotiation discussions and the State failed to make the negotiated sentence recommendation, resulting in confusion and a manifest injustice in the sentencing process. We, therefore, reverse the order denying Dimmitt's motion to withdraw his guilty plea and remand for a change of judge and further proceedings.

I

[¶ 2]   Dimmitt was charged with class B felony gross sexual imposition, in violation of N.D.C.C. §§ 12.1–20–03(1)(d) and 12.1–20–03(2)(a), for engaging in sexual acts with his adopted daughter, age 13. Dimmitt entered a plea of not guilty at his October 1, 2001 preliminary hearing. The State and Dimmitt's defense attorney entered into plea negotiations and tentatively agreed the State would recommend Dimmitt be sentenced to five years imprisonment, with all five years suspended, except for time served, and that Dimmitt would serve a probation period of five years. However, Dimmitt's attorney was concerned that the judge would not accept the recommendation, and in March 2002 the State's attorney and Dimmitt's attorney met with the judge who would be sentencing Dimmitt and discussed the plea negotiations.

[¶ 3]   On April 17, 2002, Dimmitt went before a different judge to change his plea to guilty. Dimmitt's attorney told the court his client's change of plea was based upon an open plea recommendation from the State that Dimmitt would get five years imprisonment which would be suspended for time served and that he would also be sentenced to five years of probation. The court responded:

I did inform him of the maximum penalty and I didn't go beyond that to explain that even though the State might recommend something and you recommend something that the court is not bound by those recommendations. And that the court could impose anything up to the maximum. The reason I didn't go into that I am not sure that I will be the sentencing judge.

[¶ 4]   Three months later, at the sentencing proceedings on July 22, 2002, before the judge with whom plea negotiations

had been discussed, the State recommended Dimmitt be sentenced to ten years imprisonment but that he be given credit for time served and the balance be suspended for a five-year period. This recommendation did not comport with the negotiated plea, but Dimmitt's counsel did not object to it:

> As to the plea recommendation by the State, we would concur with that. I know this is a rather unusual situation. However, if the Court does recall me and Mr. Mattson did sit down with the Court and explain to you the circumstances of this case. You were hesitant to even consider the recommendation at first. However, you said if there was a letter from the mother saying that she concurred in the sentencing that the Court would go with it. So that's why the letter was prepared and that's why the letter was presented to the Court.

Later in the proceedings the court imposed sentence upon Dimmitt different from the open plea recommendation:

> The parties here have submitted to the court an open plea agreement which I will accept in part but not totally. I will sentence him to ten years with the Department of Corrections. He will be given credit for time served. I will direct that a nursing home assessment and medical assessment of the defendant be made early on in his period of incarceration. . . . It is my observation that with his health problems that the State will do the nursing home assessment very quickly and they will move him into a situation where he can be housed safely and his health needs can be attended to and the community will be safe. There will be no suspended part of this sentence. Anything else from the State?
>
> MR. MATTSON: No.
>
> THE COURT: Defense?

MR. TERRY: Is it my understanding he is getting ten years with no time suspended?

THE COURT: That's right.

MR. TERRY: What about us conferring with the Court in your office and you basically telling us if the mom agreed you would go along with it?

THE COURT: I am aware of that. The mom did agree. That changed. There is not going to be any suspended sentence. If it is going to be suspended the parole board can handle that. Thank you.

[¶ 5] Dimmitt moved to withdraw his guilty plea under N.D.R.Crim.P. 32(d). At the October 30, 2002, motion hearing Dimmitt's counsel discussed the plea negotiations:

> I relayed to my client and he relied on me that we had had this discussion in chambers and after this discussion I believed the Court was going to accept it with a letter from [the victim's mother]. . . . Mr. Dimmitt relied on what I told him. I relied on what the Court had told me. I understand that the Court didn't have to accept the plea agreement but the thing was we did discuss it with you and we did sit down and the Court did say to us that it was willing to go with the recommendations.

Later in the proceedings, the court and Dimmitt's counsel had the following exchange:

THE COURT: I don't recall saying I would go with it.

MR. TERRY: I may be wrong. I thought the Court said, "I will go with it if you get something from the mother." But for the Court then to get the recommendation and then to pop with ten years, literally nine and a half years above what the recommendation was, that I feel is manifestly unjust.

After the hearing the court denied the motion and Dimmitt filed this appeal.

## II

### A.

[¶ 6] Dimmitt asserts the district court erred in denying his motion to withdraw his plea of guilty. Under N.D.R.Crim.P. 32(d)(1) the court must grant the defendant's timely motion for withdrawal of a guilty plea if the defendant proves withdrawal is necessary to correct a manifest injustice.[1] The determination of a manifest injustice is ordinarily within the trial court's discretion, and will be reversed on appeal only for an abuse of discretion. *State v. Farrell*, 2000 ND 26, ¶ 8, 606 N.W.2d 524. A trial court abuses its discretion when it acts in an arbitrary, unreasonable, or capricious manner, or misinterprets or misapplies the law. *Id.* The defendant has the burden of proving withdrawal is necessary to correct a manifest injustice. *State v. Thompson*, 504 N.W.2d 315, 319 (N.D.1993).

### B.

[¶ 7] Dimmitt asserts a manifest injustice occurred when the district court participated in plea negotiations. A manifest injustice may result from procedural errors by the sentencing court. *Farrell*, 2000 ND 26, ¶ 8, 606 N.W.2d 524. To demonstrate a manifest injustice under these circumstances, Dimmitt must show his guilty plea resulted from the influence or confusion caused by the trial court's involvement in the plea negotiations. The trial judge acknowledged having discussions about the plea negotiations with the State's attorney and Dimmitt's counsel. Dimmitt's counsel asserts that his client was misled by the negotiation process in which the court involved itself and that his client pled guilty believing the trial judge had agreed to accept the negotiated sentence. The colloquy between the court and Dimmitt's counsel at the sentencing supports this assertion and shows the court's involvement created confusion and may have influenced Dimmitt to plead guilty. After the judge sentenced Dimmitt, his counsel immediately said to the court, "[w]hat about us conferring with the Court in your office and you basically telling us if the mom agreed you would go along with it?" The court responded, "I am aware of that. The mom did agree. That changed. There is not going to be any suspended sentence." The confusion created by the court's involvement in the negotiations is obvious from those remarks.

[¶ 8] This case is in some ways similar to the circumstances in *Farrell*, 2000 ND 26, ¶ 18, 606 N.W.2d 524, wherein the defendant agreed during negotiations to plead guilty to a forgery charge in exchange for the State dropping a burglary charge and making a nonbinding sentence recommendation. When the judge imposed a more harsh sentence it was clear from the record the defendant was confused by the court's action. We held the result was manifest injustice entitling the defendant to withdraw his guilty plea:

> Immediately after the trial court pronounced sentence, Farrell was confused and told the court he thought he would be able to withdraw his guilty plea if the recommended sentence was not accepted. Only then did the trial court explain the difference between nonbinding sentence recommendations and binding plea agreements. Farrell's confusion and his

---

1. *Compare* Fed.R.Crim.P. 11(h), "A variance from the requirements of this rule is harmless error if it does not affect substantial rights."

immediate objection call into question whether his plea was voluntary; on this record we cannot conclude it was.

Because the record shows the trial court did not substantially comply with the requirements of N.D.R.Crim.P. 11(c) and Farrell did not fully understand the nature of his informal agreement for a nonbinding sentence recommendation from the State, we conclude withdrawal of Farrell's guilty plea is necessary to correct a manifest injustice.

*Id.* at ¶¶ 20–21. We conclude the judge's involvement in the plea discussions in this case caused confusion and misunderstanding by Dimmitt as to the effect of his plea, and resulted in a manifest injustice entitling Dimmitt to withdraw his guilty plea.

[¶ 9] Rule 11(d)(1), N.D.R.Crim.P., provides, "the court shall not participate" in plea agreement discussions. On this point, the federal rule is substantively identical to our rule and prohibits the court from participating in any plea discussions. Fed. R.Crim.P. 11(c)(1). The Ninth Circuit Court of Appeals in *United States v. Bruce*, 976 F.2d 552, 556–58 (citations omitted), explains the purpose of the rule prohibiting a judge from participating in plea discussions:

> Rule 11(e)(1)[2] simply commands that the judge not participate in, and remove him or herself from, any discussion of a plea agreement that has not yet been agreed to by the parties in open court.

The "bright-line rule" created by Fed. R.Crim.P. 11(e)(1) bars a judge from participating in plea bargaining for three main reasons. First, such participation is prohibited because judicial involvement in plea negotiations inevitably carries with it the high and unacceptable risk of coercing a defendant to accept the proposed agreement and plead guilty.

. . . .

Second, Rule 11 protects the integrity of the judicial process. "The Rule is based on the sound principle that the interests of justice are best served if the judge remains aloof from all discussions preliminary to the determination of guilt or innocence so that his impartiality and objectivity shall not be open to any questions or suspicion when it becomes his duty to impose sentence."

. . . .

Finally, Rule 11 bars judicial participation in plea discussions in order to preserve the judge's impartiality *after* the negotiations are completed. Judicial involvement detracts from a judge's objectivity in three ways. First, "[s]uch involvement makes it difficult for a judge to objectively assess the voluntariness of the plea" eventually entered by the defendant. . . . Next, judicial participation in plea discussions that ultimately fail inherently risks the loss of a judge's impartiality during trial, not only because he becomes aware of the defendant's possible interest in pleading guilty, but also because he may view unfavorably the defendant's rejection of the proposed agreement. . . . Further, involvement in plea negotiations diminishes the judge's objectivity in post-trial matters such as sentencing and motions for a judgment of acquittal.

[¶ 10] This case demonstrates the confusion and uncertainty of the voluntariness of a guilty plea which can arise when the trial court violates the strict prohibition under N.D.R.Crim.P. 11(d)(1) from participating in the negotiation process. Unless

---

**2.** The federal criminal procedure rule prohibiting the court from participating in plea discussions is currently codified as Rule 11(c)(1).

and until the rule is changed, our courts may not do what was done in this case.

### C.

[¶ 11] Another troublesome aspect in this case is the State's failure to make the agreed upon recommendation. If the parties agree to a non-binding recommendation of sentence, the State fulfills its obligation when it makes the specified non-binding recommendation, and the trial court may impose a harsher sentence than the one recommended without allowing the defendant to withdraw the guilty plea. *Peltier v. State,* 2003 ND 27, ¶ 10, 657 N.W.2d 238. The State, however, recommended imposition of a ten year sentence, rather than a five year sentence, but that the sentence be suspended except for time already served. Dimmitt's counsel did not object to the State's noncomplying recommendation. Consequently, we review this matter only for obvious error.

[¶ 12] We cautiously exercise our power to notice obvious error only in exceptional situations in which a defendant has suffered serious injustice. *State v. Entzi,* 2000 ND 148, ¶ 12, 615 N.W.2d 145. To establish obvious error one must show (1) error, (2) that is plain, and (3) that affects substantial rights. *State v. Knowels,* 2002 ND 62, ¶ 7, 643 N.W.2d 20. To affect substantial rights, a plain error must have been prejudicial, or have affected the outcome of the proceeding. *State v. Hirschkorn,* 2002 ND 36, ¶ 20, 640 N.W.2d 439. Analyzing obvious error requires examination of the entire record and the probable effect of the alleged error in light of all the evidence. *Id.*

[¶ 13] It is not possible, under the circumstances, to know whether the sentencing judge was influenced by the State's recommendation of a ten year, rather than a five year, term of imprisonment. The State asserts its recommendation was made inadvertently and, several weeks after the sentencing proceedings, the State requested the court to reopen the sentencing process to allow the State to make the agreed upon recommendation. The court refused to reconsider the sentence imposed.

[¶ 14] It is constitutionally impermissible to hold a defendant to his negotiated plea when the promises upon which it was based were not performed. *See Santobello v. New York,* 404 U.S. 257, 262, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971). Considering the trial court's impermissible involvement in the negotiation discussions, in violation of Rule 11(d)(1), together with the State's failure to make the agreed upon recommendation, we conclude Dimmitt has shown a manifest injustice requiring that he be afforded an opportunity to withdraw his guilty plea.

### III

[¶ 15] A remaining question is whether the case should be remanded to the sentencing judge or to another judge. The purpose of Rule 11 is not only to protect judicial neutrality but also to eliminate the coercive effect of judicial participation on plea bargaining. The Sixth Circuit Court of Appeals in *United States v. Barrett,* 982 F.2d 193, 196 (6th Cir.1992) (citation omitted), explains:

> "Regardless of the judge's objectivity, it is the defendant's perception of the judge that will determine whether the defendant will feel coerced to enter a plea." Even if the District Judge can put aside knowledge about the defendant and provide a fair hearing, the judge cannot remove the doubt from the defendant's mind caused by his statements in this case. To cure this improper judicial participation in the plea bargaining process, then, the case must be assigned to another judge.

Even if the sentencing judge could remain impartial and act with objectivity in this case, the larger issue is whether the defendant's perception of the judge is such that he will feel coerced to enter a particular plea. Under these circumstances, to cure an improper judicial participation in the plea bargaining process, it is appropriate to assign the case to another judge.

[¶ 16] We, therefore, reverse the order denying Dimmitt's motion to withdraw his guilty plea and remand the case with instructions that the presiding judge assign a judge other than the original sentencing judge to conduct further proceedings in accordance with this opinion.

[¶ 17] GERALD W. VANDE WALLE, C.J., MARY MUEHLEN MARING, CAROL RONNING KAPSNER, and DALE V. SANDSTROM, JJ., concur.