2010 ND 45

**Karen E. HARRIS and M.P.H., Petitioners and Appellees**

v.

**David L. HARRIS, Respondent and Appellant.**

**No. 20090247.**

Supreme Court of North Dakota.

March 16, 2010.

Stephanie Ann Weis, Grand Forks, N.D., for petitioners and appellees; submitted on brief.

David L. Harris, self-represented, Grand Forks, N.D., respondent and appellant; submitted on brief.

VANDE WALLE, Chief Justice.

[¶ 1] David L. Harris appealed from a magistrate's disorderly conduct restraining order prohibiting him from having contact with Karen E. Harris and unsupervised contact with their son, and from a district court order denying his request for review of the magistrate's decision. We affirm the district court's order, but we reverse the magistrate's order because David Harris did not receive a full hearing required under the law, and we remand for a new hearing.

I

[¶ 2] In early June 2009, Karen Harris filed in Grand Forks County a petition for a disorderly conduct restraining order against her husband, David Harris, alleging he had made threats against her and their eight-year-old son. She alleged David Harris threatened to call Social Services or the police to have their son removed from the home "because [their son] will not listen to him." She alleged he threatened to "kill" her if she ever planned to divorce him. She alleged he threatened to "kill" their son if he discovered their son was fighting in school again. Karen Harris also alleged her brother received "a call from a close friend informing us of watching my brother's home, following me in any vehicle I drove, along with the threat of taking my brother's grandson in exchange for [our son] even if I were to be hurt taking him. David has had bad violent tend[en]cies in the past and I fear he will be violent once again." A magistrate issued a temporary disorderly conduct re-

straining order pending a hearing to be held on June 23, 2009.

[¶ 3] At the hearing, an attorney represented Karen Harris and David Harris represented himself. After the magistrate explained to the parties the effect of, and the procedure and burden of proof for, a disorderly conduct restraining order, the magistrate addressed David Harris:

THE COURT: One of the first questions I ask a lot of times in some of these cases is—and many times, particularly on these restraining orders as opposed to the protection orders, people say, "Well, she doesn't or he doesn't want to see me again, and so we might as well have an order keeping us apart, and I don't mind."

What's your position on that?

MR. HARRIS: That's pretty much exactly what I think is going on.

THE COURT: Is that what you think you would want, you would be okay with?

MR. HARRIS: That I don't want to speak to her?

THE COURT: No. No. Are you willing to stay away from her—

MR. HARRIS: Oh, yeah. The only reason I even tried to like call her at work or what not was to find out if my son was okay and where he was.

THE COURT: Okay. So you're willing to have a restraining order?

MR. HARRIS: I'd rather not have the restraining order, but if it has to be that way, I guess it has to be that way.

THE COURT: Do you want a trial on the issue? Do you want testimony to be taken on the issue of whether your gestures are unwanted and whether they affect her privacy or something she doesn't want? Do you want us to go

through a trial on that and take testimony and so forth?

MR. HARRIS: I would like the restraining order dropped.

THE COURT: Do you wish to go ahead? Okay. That means to me that he wants a hearing, unless you have another idea, Ms. Weis.

M[S]. WEIS: No—

THE COURT: Sometimes things get worked out like that, you know, because people don't want to see each other, there's some problems, and maybe there's another case, proceedings come along, and I don't know. You're husband and wife right now it looks like.

MR. HARRIS: Well, yeah.

THE COURT: And I don't know if there is any divorce proceedings pending or what the situation is.

MR. HARRIS: I've been trying to get a lawyer to start the divorce proceedings.

THE COURT: Under those circumstances, if she doesn't want anything to do with you, and you're going to get a divorce proceedings, are you still going to object to have a restraining order keeping you apart at this time?

MR. HARRIS: I just want to be able to see my son.

THE COURT: Okay. Okay. That can be arranged.

MR. HARRIS: Okay.

THE COURT: This is for you not to bother her.

MR. HARRIS: I wasn't planning on it.

THE COURT: Some arrangements can be made like sometimes just a mutual friend or a parent or somebody else.

M[S]. WEIS: Your Honor, we would be willing at this time to arrange for visitation at the Wishing Well.

MR. HARRIS: I've already been in contact with Social Services as well about trying to set up visitation, but they said as long as a restraining order was in—

THE COURT: If a restraining order is in effect, it doesn't have anything to do with your ability to visit your child.

MR. HARRIS: Well, in the restraining order it says I can't have contact with him either.

MS. WEIS: We would be willing to add a provision that would allow for visitation at the Wishing Well. And through the Wishing Well you can arrange for a time that would work for both parties and allow for—

THE COURT: She can take your son to the Wishing Well, and you can come in and see your child.

MR. HARRIS: That would work.

THE COURT: That would work for you?

MR. HARRIS: Yes, sir.

THE COURT: I tell you, the reason I kind of push that sometimes, sometimes when you take a bunch of testimony on the stand, things get worse and worse and worse between the parties, and all kinds of testimony is taken that people object to, and it looks worse sometimes.

MR. HARRIS: Well, I don't know how it could look any worse. I've read what she stated, and that's why these gentlemen are here today, because for some of these conversations that she claims, some of them were there for the conversations that never took place the way she stated. That's why I'm here today.

[¶ 4] After discussing the potential for divorce proceedings, the magistrate said "a restraining order is appropriate, and we'll get the provisions in there that you can see your child at the Wishing Well."

The parties and the magistrate discussed arrangements for David Harris to remove his belongings from the parties' home and further discussed visitation, but David Harris continued to state, "I just don't understand why a restraining order has to stay in place. . . . It's not like I was trying to harass her." David Harris also expressed concern about the wording of the restraining order "[b]ecause like I was trying to say, the stuff she said in there is not true." Without receiving any evidence, the magistrate issued the disorderly conduct restraining order for a period of one year. In response to the magistrate's explanation of the terms of the order, David Harris stated "I'm a little confused at the moment." The written order includes the provision that David Harris "may exercise supervised visitation through the Wishing Well. Each party shall be responsible for his or her costs associated with the visitation."

[¶ 5] David Harris sought a review of the magistrate's order by the district court. The court denied the petition for review, concluding it lacked authority to review the magistrate's decision. Because David Harris appealed from the district court's order and the magistrate's order, both orders are before us.

## II

[¶ 6] David Harris argues the district court erred in declining to review the magistrate's decision to issue the disorderly conduct restraining order.

[¶ 7] There is no federal or state constitutional right to appeal. *City of Grand Forks v. Riemers*, 2008 ND 153, ¶ 5, 755 N.W.2d 99. Rather, the right to appeal is statutory in nature. *State v. Hatlewick*, 2005 ND 125, ¶ 15, 700 N.W.2d 717. Under N.D.C.C. § 27–05–06(4), district courts have "[j]urisdiction of appeals from all final judgments of municipal judges and from the determinations of inferior officers, boards, or tribunals, in the cases and *pursuant to the regulations as may be prescribed by law.*" (emphasis added). The legislature gave district courts authority to appoint judicial referees under N.D.C.C. § 27–05–30 and to appoint magistrates under N.D.C.C. § 27–05–31. The scope of delegable duties for a judicial referee are set forth in N.D. Sup. Ct. Admin. R. 13(5) and the scope of delegable duties for a magistrate are set forth in N.D. Sup. Ct. Admin. R. 20(5). A magistrate is specifically given the authority "[t]o issue disorderly conduct restraining orders under N.D.C.C. ch. 12.1–31.2." N.D. Sup. Ct. Admin. R. 20(5)(a)(8). While there is a specified procedure for district court review of a judicial referee's decision, *see* N.D. Sup. Ct. Admin. R. 13(11); *Interest of B.F.*, 2009 ND 53, ¶¶ 9–12, 764 N.W.2d 170, there is no specified procedure for district court review of a magistrate's decision.

[¶ 8] Because there is no statute or rule authorizing an appeal to district court from a magistrate's decision on a disorderly conduct restraining order, we conclude the district court did not err in ruling it had no authority to review the magistrate's decision. The order of the magistrate, who "has that authority performable by a district court judge as assigned by the presiding judge," N.D.C.C. § 27–05–31, is appealable to this Court under N.D.C.C. § 28–27–01.

## III

[¶ 9] David Harris argues that he was denied due process because he was not afforded a full hearing before the magistrate issued the disorderly conduct restraining order.

[¶ 10] Under N.D.C.C. § 12.1–31.2–01(5)(d), a district court may grant a

disorderly conduct restraining order if the court finds "after the hearing that there are reasonable grounds to believe that the respondent has engaged in disorderly conduct." Generally, the grant of a disorderly conduct restraining order is discretionary, and a district court's decision must be reviewed under an abuse of discretion standard. *Meier v. Said,* 2007 ND 18, ¶ 20, 726 N.W.2d 852. In *Holbach v. Dixon,* 2007 ND 60, ¶¶ 6–7, 730 N.W.2d 613, we explained the requirements for issuance of a disorderly conduct restraining order under N.D.C.C. § 12.1–31.2–01:

> A person who petitions for a disorderly conduct restraining order must allege specific facts or threats that adversely affect the safety, security, or privacy of another person. *See Cusey v. Nagel,* 2005 ND 84, ¶ 7, 695 N.W.2d 697. For the purposes of this statute, "disorderly conduct" is broader than and differs from the crime of disorderly conduct. *See* N.D.C.C. § 12.1–31–01(1); *see also Wetzel v. Schlenvogt,* 2005 ND 190, ¶ 17, 705 N.W.2d 836. "Reasonable grounds" is synonymous with "probable cause." *Meier* [*v. Said,* 2007 ND 18, ¶ 21, 726 N.W.2d 852]; *Wetzel,* at ¶ 17. "Thus, '[r]easonable grounds exist for obtaining a restraining order ... when the facts and circumstances presented to the judge are sufficient to warrant a person of reasonable caution to believe that acts constituting disorderly conduct have been committed.'" *Wetzel,* at ¶ 17 (quoting *Wishnatsky v. Huey,* 1997 ND 35, ¶ 14, 560 N.W.2d 878).

We have also held due process is required throughout the restraining order proceedings. *Meier,* 2007 ND 18, ¶ 15, 726 N.W.2d 852; *Wetzel,* 2005 ND 190, ¶ 23, 705 N.W.2d 836. At the hearing, the petitioner must prove the allegations in the petition through sworn testimony. *Meier,* at ¶ 15. "In order to comport with due process, a fair hearing requires reasonable notice or opportunity to know of the claims of opposing parties, along with the opportunity to rebut those claims." *Id.* Due process also requires a fair hearing, which prevents defects in the hearing process that might lead to a denial of justice. *See Gullickson v. Kline,* 2004 ND 76, ¶ 22, 678 N.W.2d 138.

A district court errs as a matter of law when it denies the respondent the full and fair hearing mandated by N.D.C.C. § 12.1–31.2–01 and due process. *See Gullickson v. Kline,* 2004 ND 76, ¶ 22, 678 N.W.2d 138. The same rule applies to our review of a magistrate's decision. *See* N.D.C.C. § 27–05–31.

[¶ 11] In this case, no evidence was offered by Karen Harris during the proceeding to support the allegations in her petition and David Harris was not given an opportunity to rebut any of the allegations contained in the petition. Karen Harris nevertheless argues due process requirements were met because David Harris "came to the proceeding and waived his right to have a full hearing by agreeing multiple times to the issuance" of the disorderly conduct restraining order.

[¶ 12] A disorderly conduct restraining order is a civil remedy for a petitioner whose safety, security, or privacy has been intruded upon. *Meier,* 2007 ND 18, ¶ 23, 726 N.W.2d 852. We apply the "voluntary, knowing, and intelligent waiver" test to due process challenges in civil cases. *See 1st Summit Bank v. Samuelson,* 1998 ND 113, ¶ 16, 580 N.W.2d 132; *Underwood Farmers Elevator v. Leidholm,* 460 N.W.2d 711, 714 (N.D.1990). Under the circumstances of this case, we conclude David Harris did not voluntarily, knowingly, and intelligently waive his right to a full hearing.

[¶ 13] The circumstances in this case are somewhat analogous to those present in *State v. Vandehoven*, 2009 ND 165, 772 N.W.2d 603. In *Vandehoven*, the defendant, who had pled guilty to operating or being in actual physical control of a motor vehicle while under the influence of alcohol, sought to withdraw his guilty plea alleging the district court improperly participated in plea negotiations in violation of N.D.R.Crim.P. 11(c)(1). *Vandehoven*, at ¶¶ 1, 13, 14. The district court had been informed at a pretrial conference that the parties had not reached a plea agreement, and lengthy negotiations ensued between the court, the defendant, and defense counsel, "with little input or participation from the State's Attorney." *Id.* at ¶ 13. After the "court essentially immersed itself in the plea agreement negotiations and 'brokered' the deal," the defendant agreed to plead guilty. *Id.* In concluding it was obvious error for the district court to actively participate in the plea negotiations, we outlined the three reasons for the strict prohibition in N.D.R.Crim.P. 11(c)(1): (1) judicial involvement in plea negotiations carries with it the risk of coercing a defendant to accept the agreement and plead guilty; (2) the interests of justice are best served if the judge is detached from discussions preliminary to a determination of guilt or innocence so the court's impartiality and objectivity are not open to questions or suspicion; and (3) judicial involvement in plea discussions detracts from the court's objectivity. *Vandehoven*, at ¶¶ 15, 18 (quoting *State v. Dimmitt*, 2003 ND 111, ¶¶ 9–10, 665 N.W.2d 692).

[¶ 14] We recognize a proceeding for a disorderly conduct restraining order is not a criminal proceeding, there is no rule comparable to N.D.R.Crim.P. 11(c)(1) applicable to a civil proceeding, and public policy encourages settlements of legal disputes. *See* *Schlossman & Gunkelman, Inc. v. Tallman*, 1999 ND 89, ¶ 15, 593 N.W.2d 374 (interpreting *Blackburn, Nickels & Smith, Inc. v. National Farmers Union Prop. & Cas. Co.*, 452 N.W.2d 319, 323 (N.D.1990)). Nevertheless, although a proceeding for a disorderly conduct restraining order is civil in nature, we have noted "the significant restraint placed upon the respondent's liberty and the stigma resulting from a disorderly conduct restraining order." *Gullickson*, 2004 ND 76, ¶ 8, 678 N.W.2d 138; *see also Tibor v. Lund*, 1999 ND 176, ¶ 17, 599 N.W.2d 301. The concerns which prompted the prohibition in criminal cases are also present when a district court or magistrate becomes unduly involved in negotiating the waiver of a respondent's statutory and due process right to a full hearing before a disorderly conduct restraining order may be issued.

[¶ 15] Here, the magistrate broached the subject of David Harris forgoing an evidentiary hearing on Karen Harris's petition. Except for offering to arrange visitation and suggesting a one-year period for the restraining order, Karen Harris's attorney took little part in the discussions. David Harris gave ambiguous and seemingly contradictory responses to questions concerning his desire for an evidentiary hearing. The magistrate's focus throughout the proceeding on dispensing with the evidentiary hearing could certainly be viewed as subtle coercion by a self-represented respondent. *Cf. Dimmitt*, 2003 ND 111, ¶ 10, 665 N.W.2d 692 ("This case demonstrates the confusion and uncertainty of the voluntariness of a guilty plea which can arise when the trial court violates the strict prohibition ... from participating in the negotiation process"). Toward the end of the proceeding, David Harris stated he was "confused" and continued to dispute the truthfulness of the allegations contained in Karen Harris's petition.

[¶ 16] Under the totality of the circumstances, we conclude David Harris did not voluntarily, knowingly, and intelligently waive his right to, and did not receive, the full and fair hearing mandated by N.D.C.C. § 12.1–31.2–01 and due process.

### IV

[¶ 17] We conclude the other issues raised are either without merit or unnecessary to resolve in view of our disposition of the case. We affirm the district court's order, reverse the magistrate's order, and remand for a new hearing.

[¶ 18] DALE V. SANDSTROM, CAROL RONNING KAPSNER and DANIEL J. CROTHERS, JJ., concur.

MARY MUEHLEN MARING, J., concurs in the result.