2002 ND 187

**Marjorie Florence WALKER, Plaintiff and Appellant,**

v.

**James Dwayne WALKER, Defendant and Appellee.**

**No. 20020062.**

Supreme Court of North Dakota.

Dec. 4, 2002.

Paul M. Probst, Probst Law Firm, Minot, ND, for plaintiff and appellant.

Faron E. Terry, Minot, ND, for defendant and appellee.

VANDE WALLE, Chief Justice.

[¶ 1] Marjorie F. Walker appealed from a judgment granting her a divorce from James Dwayne Walker, distributing their marital property, and awarding her temporary spousal support. We conclude the trial court's property distribution is not clearly erroneous, but conclude the court erred in fashioning the temporary spousal support award. We modify the judgment and affirm the judgment as modified.

I

[¶ 2] Marjorie and James, both age 63 at the time of trial, were married July 19, 1969, in Minot. It was Marjorie's second marriage. Her first husband died in August 1968, and her youngest son from the first marriage, a volunteer firefighter, died from toxic smoke inhalation in the mid 1990s. Marjorie and James had a son, who was an adult at the time of trial.

[¶ 3] Before and during this marriage, Marjorie did not work outside of the home. Shortly before the marriage, she made a down payment on the parties' jointly-owned home from a $3,000 life insurance payment she received after her first husband died. Marjorie also received a $119,894 death benefit from the United States Department of Justice in 1997 after her son died. James has been employed with the Minot Sanitation Department throughout the marriage and, at the time of trial, was earning a gross monthly income of $2,570 and had a vested retirement pension valued at $37,558.92. James was eligible to retire with a monthly pension benefit of $1,572.62, but he was still working at the time of trial.

[¶ 4] The parties separated in 1995, and in a separate proceeding, James was ordered to pay Marjorie $600, and later $700, per month in spousal support, to pay the real estate taxes on the marital home, and to pay $4,500 in expenses for the funeral of Marjorie's son. James paid the spousal support, but did not pay the taxes on the home or the funeral expenses.

[¶ 5] In October 2000, Marjorie brought this divorce action against James. Property distribution and spousal support were contested. The major disputed marital assets consisted of: (1) their home, valued at $65,000 with real estate taxes owing of $7,117.43; (2) Marjorie's bank account, containing $36,000 remaining from her son's death benefit; and (3) James's retirement fund, valued at $37,558.92. The trial court awarded the marital home to Marjorie, subject to a lifetime encumbrance in favor of James. Under this award, if Marjorie sells the home during James's lifetime, Marjorie would receive the first $15,000 of the net proceeds, and James would receive one-third of the remainder. Of the $36,000 in Marjorie's bank account, James was awarded $6,000. Marjorie was awarded the remainder, but was ordered to pay the $7,117.43 real estate taxes owing on the home. The parties were ordered to pay their own attorney fees. The trial court also ruled Marjorie was entitled to one-

third of James's retirement account, "calculated on the balance of this account as of June 6, 2001." The court further ordered James to continue "to pay Marjorie spousal support in the amount of $700 per month until the effective date of James' retirement, or until the month of James' sixty-fifth (65) birthday, which ever occurs first." Marjorie appealed.

## II

[¶ 6] Marjorie argues the trial court's property division and debt allocation is inequitable in this case.

[¶ 7] Section 14-05-24(1), N.D.C.C., requires the court to "make an equitable distribution of the property and debts of the parties." Although there is no set formula for dividing a marital estate, the trial court must equitably divide the property based on the circumstances of the particular case judged in light of the *Ruff Fischer* guidelines, which include:

> the respective ages of the parties to the marriage; their earning abilities; the duration of the marriage and the conduct of each during the marriage; their station in life; the circumstances and necessities of each; their health and physical conditions; their financial circumstances as shown by the property owned at the time; its value and income-producing capacity, if any, and whether it was accumulated or acquired before or after the marriage; and such other matters as may be material.

*Dufner v. Dufner*, 2002 ND 47, ¶ 9, 640 N.W.2d 694 (citation omitted). *See also Ruff v. Ruff*, 78 N.D. 775, 52 N.W.2d 107 (N.D.1952); *Fischer v. Fischer*, 139 N.W.2d 845 (N.D.1966). The trial court must consider all property accumulated by the parties, whether jointly or individually owned, and property brought into the marriage by one party, and separate property acquired by gift, inheritance, or otherwise, must be included in the marital estate and is subject to distribution. *Dufner*, at ¶ 9. A trial court's determinations regarding division of property are treated as findings of fact and will not be reversed on appeal unless they are clearly erroneous. *Mellum v. Mellum*, 2000 ND 47, ¶ 14, 607 N.W.2d 580. A finding of fact is clearly erroneous if it is induced by an erroneous view of the law, if there is no evidence to support it, or if, although there is some evidence to support it, on the entire evidence we are left with a definite and firm conviction a mistake has been made. *DesLauriers v. DesLauriers*, 2002 ND 66, ¶ 20, 642 N.W.2d 892.

[¶ 8] Marjorie argues it was inequitable to award James any interest in the parties' home because he did not provide the down payment, never made a mortgage payment, and did not pay for any of the $15,000 in improvements Marjorie made to the home with her son's death benefit. When property is acquired by one spouse before the marriage, this factor is not controlling but is one of many factors to be considered in determining a property distribution. *See, e.g., Weigel v. Weigel*, 2000 ND 16, ¶ 8, 604 N.W.2d 462. Moreover, there is evidence from which the trial court could find that James contributed to the purchase of the home. James testified he gave his paychecks to Marjorie and they would together drive to their creditors to pay the bills. James testified he provided the money for the mortgage payments until the mortgage was satisfied from flood insurance proceeds in 1982. James also testified he took a second mortgage on the home, which has since been satisfied, to construct a family room, wash room, bathroom, and two bedrooms above the garage. He further testified he provided some of the labor to make those improvements. We conclude it was not inequitable for the trial

court to give James an encumbrance on the home while Marjorie lives there and an interest in the proceeds of its sale if it should be sold during his lifetime.

■ [¶ 9] Marjorie also argues the trial court erred in awarding her only one-third of James's retirement pay. Because the parties were married throughout the time James was contributing to his pension account, Marjorie argues she is entitled to one-half of James's retirement pay under the formula adopted in *Bullock v. Bullock,* 354 N.W.2d 904 (N.D.1984). However, we have often said use of the *Bullock* formula to distribute retirement pay is not mandatory because the formula is not the only method of achieving an equitable division of marital property. *See, e.g., Johnson v. Johnson,* 2002 ND 151, ¶ 18, 652 N.W.2d 315. If, as we discuss in this section, the overall distribution of the marital estate is equitable, the award of one-third of James's retirement pay to Marjorie is not error. *See Braun v. Braun,* 532 N.W.2d 367, 370 (N.D.1995).

[¶ 10] Marjorie claims the trial court erred in awarding James a share of Marjorie's bank account because this account contains the remaining death benefit proceeds for her son which she received after the parties had separated. Marjorie argues she has been using the money to sustain herself and it is inequitable for James to be awarded any of it. She also argues she should not have been allocated the real estate tax debt because James had been ordered to pay that debt in the separation action.

[¶ 11] The trial court in this case was faced with difficult circumstances. Two of the parties' three major assets, the home and James's retirement account, are not easily liquidated assets. Marjorie's bank account, the majority of which the court said "should remain with Marjorie," was the only truly liquid asset between the parties. James requested the home be sold and the proceeds split between the parties, but the trial court instead granted Marjorie's request that she be awarded the home. Only if she decides to sell the home does she have to share any of the sale proceeds with James. James was ordered to pay the real estate taxes on the home before Marjorie received her son's death benefit, and he testified it was difficult making all of the periodic payments on the taxes because he was "short of funds." Marjorie was awarded one-third of James's not-yet accessible retirement funds, leaving the trial court only Marjorie's bank account to adjust the equitability of the distribution. The trial court awarded James $6,000 from the bank account and allocated the $7,117.43 real estate tax debt to Marjorie in an attempt to make the overall property distribution equitable. We have approved offsetting monetary awards when it is impractical or unsound to liquidate essentially nonliquid assets. *See Linrud v. Linrud,* 1998 ND 55, ¶ 13, 574 N.W.2d 875; *Gibbon v. Gibbon,* 1997 ND 210, ¶ 8, 569 N.W.2d 707; *Heley v. Heley,* 506 N.W.2d 715, 718 (N.D. 1993). It might have been easier for the trial court to order the home sold and the proceeds divided in a manner that avoided the necessity of awarding James funds from Marjorie's bank account to achieve what the trial court found an equitable distribution, but Marjorie did not want the home sold.

[¶ 12] According to James's undisputed calculations, the value of Marjorie's share of the property distribution after subtracting the debts allocated to her is roughly $52,662. This figure does not include the $23,139.30 awarded to Marjorie from her bank account which, although included in the parties' marital property and debt listing, was excluded by the trial court from the marital property for distribution pur-

poses because, "for equitable considerations, the majority of these remaining funds should remain with Marjorie." The value of James's share of the property distribution after subtracting the debts allocated to him is about $42,734. If Marjorie chooses to not sell the home, her distribution value increases to about $67,662, and James's distribution value decreases to approximately $26,093. There are other methods the trial court could have used to divide the marital property, but the method used to distribute the property here is not clearly erroneous and the result is not inequitable.

### III

[¶ 13] Marjorie argues the trial court erred in failing to make her spousal support award permanent.

[¶ 14] Under N.D.C.C. § 14–05–24.1, a court "may require one party to pay spousal support to the other party for any period of time." Property division and spousal support are interrelated, and the *Ruff Fischer* guidelines also apply when determining whether spousal support should be awarded. *McDowell v. McDowell*, 2001 ND 176, ¶ 12, 635 N.W.2d 139. Spousal support is aimed at balancing the burdens and disadvantages created by the divorce. *Riehl v. Riehl*, 1999 ND 107, ¶ 11, 595 N.W.2d 10. Rehabilitative spousal support is ordered to give a disadvantaged spouse an opportunity to become adequately self-supporting through additional training, education or experience. *Peters–Riemers v. Riemers*, 2002 ND 72, ¶ 26, 644 N.W.2d 197. Permanent spousal support is generally appropriate when the disadvantaged spouse cannot be equitably rehabilitated to make up for the opportunities lost in the course of the marriage. *Sommer v. Sommer*, 2001 ND 191, ¶ 14, 636 N.W.2d 423. Permanent spousal support may also be awarded when the marriage is of long duration and the dependent spouse has health problems or is of such an age that adequate rehabilitation is unlikely. *Id.*

[¶ 15] A disadvantaged spouse is one who has foregone opportunities or lost advantages as a consequence of the marriage and who has contributed during the marriage to the supporting spouse's increased earning capacity. *Corbett v. Corbett*, 2001 ND 113, ¶ 19, 628 N.W.2d 312. We have said "[a]ny spouse who remains at home, out of the workforce, in order to maintain a marital residence and act as a homemaker, any parent who remains out of the workforce if only to some degree in order to provide child care, has foregone opportunities and has lost advantages that accrue from work experience and employment history." *Weigel*, 2000 ND 16, ¶ 13, 604 N.W.2d 462. "Furthermore, a valid consideration in determining whether a spouse is disadvantaged as a result of the divorce is whether there is a need to equitably balance the burdens created by the divorce where the parties cannot maintain the same standard of living apart as they enjoyed together." *Sommer*, 2001 ND 191, ¶ 10, 636 N.W.2d 423.

[¶ 16] Thus, spousal support determinations must be made in light of the income and needs of the disadvantaged spouse and of the supporting spouse's needs and ability to pay. *McDowell*, 2001 ND 176, ¶ 13, 635 N.W.2d 139. Spousal support decisions are treated as findings of fact which will not be set aside on appeal unless clearly erroneous. *Sommer*, 2001 ND 191, ¶ 8, 636 N.W.2d 423.

[¶ 17] The trial court found Marjorie "has serious health problems, and as the result of injuries she sustained in an automobile accident, is not likely to ever become employed." The trial court found James was "in generally good health ex-

cept for some emphysema problems, and is in need of false teeth." By recognizing Marjorie's age, her "serious health problems," her status as a "stay at home mom and wife" throughout the lengthy marriage, and the unlikelihood she will "ever become employed," the trial court implicitly found that Marjorie is a disadvantaged spouse. The difficulty facing the trial court in this case was balancing Marjorie's income and needs against James's needs and ability to pay support to Marjorie.

[¶ 18] Both parties were age 63 at the time of trial and had limited resources, income and assets available for their approaching retirements. Marjorie was awarded the bulk of the marital estate. James expected to retire in the near future and his retirement pension from the City of Minot would likely constitute his sole source of income.[1] The trial court found James's current net income after deductions for taxes, insurance, and the $700 per month spousal support obligation was approximately $1,100 per month. The trial court found Marjorie's only income at the time of trial was the $700 per month she received in spousal support. James listed his current monthly expenses as $1,322 per month. Marjorie listed her current monthly expenses as $1,175.54 per month. Under the terms of the judgment, when James retires, he will receive about $1,000 per month in retirement income and Marjorie will receive about $500 per month. Marjorie claims the trial court should have made the $700 per month spousal support award permanent, should have ordered James to obtain health insurance for her through COBRA at a cost of $216 per month, and should have ordered James to change the beneficiary on his life insurance policy from their granddaughter to herself.[2]

[¶ 19] In view of James's limited income and assets, Marjorie's requests are untenable. Marjorie has not arithmetically demonstrated to us, nor can we discern on our own, that it is possible for James to continue to pay $700 per month spousal support and to obtain health insurance for her after his retirement and to pay his own living expenses. *See Weir v. Weir*, 374 N.W.2d 858, 866 (N.D.1985). Indeed, neither party has enough income to meet

---

1. The evidence presented about the parties' possible entitlements to Social Security retirement benefits is ambiguous and incomplete. James testified that, because of his City pension, "I possibly could draw some Social Security, but it isn't going to be very much." At one point, Marjorie testified that, upon the granting of this divorce, she would be entitled to "seven hundred and something I guess" from her first husband's Social Security benefits. On redirect examination by her attorney, Marjorie agreed she did not know what, if any, Social Security benefits she might receive. The trial court found:

   It would appear from the evidence that James will not be eligible for social security benefits upon retirement. Marjorie, although not employed during the marriage, may yet be eligible for some minimal social security, but testified she has not checked with social security to see what, if any, benefits she may be entitled to.

   It would have been helpful if the parties had presented competent evidence about their possible entitlements to Social Security benefits to better inform the court of their total financial circumstances, especially in view of their limited resources. A court's valuation of marital property and consideration of other financial circumstances of the parties is dependent upon the evidence presented by the parties. *See Marschner v. Marschner*, 2002 ND 67, ¶ 10, 642 N.W.2d 857; *Fox v. Fox*, 2001 ND 88, ¶ 22, 626 N.W.2d 660; *Anderson v. Anderson*, 504 N.W.2d 569, 571 (N.D.1993). Because the parties provided no competent evidence of Social Security benefit entitlement, the trial court did not err in refusing to consider those possible benefits in the overall equation.

2. There was no evidence presented about the life insurance policy's death benefit or current cash value, if any.

monthly expenses while James is still working. If Marjorie's requests were granted, James would be left with no income to support himself. James simply does not have the financial resources necessary to adequately support them both in separate households during their retirement years. Considering that Marjorie received the bulk of the marital estate, we cannot say the trial court erred in refusing to make the $700 per month spousal support award permanent, in refusing to order James to continue health insurance for Marjorie after the divorce, and in refusing to order James to make Marjorie the beneficiary of his life insurance policy.

[¶ 20] One aspect of the spousal support award, however, is troublesome. The court ordered James to continue "to pay Marjorie spousal support in the amount of $700 per month until the effective date of James' retirement, or until the month of James' sixty-fifth (65) birthday, which ever [sic] occurs first." We generally prefer that a trial court spell out preordained contingency limits on spousal support in a divorce decree rather than invite further litigation by unconditionally decreeing support for life. See, e.g., Baker v. Baker, 1997 ND 135, ¶ 11 n. 1, 566 N.W.2d 806. We have also approved termination of temporary spousal support payments upon the supporting spouse's retirement, when the disadvantaged spouse has been awarded a portion of the supporting spouse's monthly retirement benefits. See Schoenwald v. Schoenwald, 1999 ND 93, ¶¶ 11–12, 593 N.W.2d 350. The contingency in this support decree, however, is puzzling. It is logical to award Marjorie $700 per month in spousal support while James is employed and earning more than he would when he retires, and terminating the spousal support when James's income decreases upon retirement and awarding Marjorie a portion of the retirement benefits. The contingency in this case allows James to discontinue the spousal support payments when he reaches age 65 and to continue working instead of retiring, leaving Marjorie with no monthly income whatsoever. There is no rational connection between conditioning termination of spousal support payments upon James's 65th birthday and Marjorie's need for support as a disadvantaged spouse or James's needs and ability to pay. The only logical way to read this provision is to subject the termination of spousal support to whichever event occurs last, rather than first, to harmonize the provision with James's ability to pay more support while he is employed. If this is not a clerical error by the trial court, we conclude the provision is clearly erroneous and we modify it to require James to pay Marjorie $700 per month spousal support until he retires, or reaches age 65, whichever event occurs last.

## IV

[¶ 21] We conclude the trial court's property distribution and its failure to order James to pay permanent spousal support, maintain health insurance for Marjorie, and make her the beneficiary of his life insurance policy are not clearly erroneous. We modify the spousal support award to make its termination contingent on when James retires or turns age 65, whichever occurs last. As modified, the judgment is affirmed.

[¶ 22] CAROL RONNING KAPSNER, MARY MUEHLEN MARING and WILLIAM A. NEUMANN, JJ., concur.

SANDSTROM, Justice, concurring in the result.

[¶ 23] For the reasons set forth in my concurring opinion in Sommer v. Sommer,

2001 ND 191, 636 N.W.2d 423, I concur in the result here.

[¶ 24]   DALE V. SANDSTROM