Filed 8/20/10 by Clerk of Supreme Court

IN THE SUPREME COURT

STATE OF NORTH DAKOTA

2010 ND 161

David Edward Snyder, Plaintiff and Appellant

v.

Anne Marie Snyder, Defendant and Appellee

No. 20100021

Appeal from the District Court of Cass County, East Central Judicial District, the Honorable Douglas R. Herman, Judge.

AFFIRMED IN PART, REVERSED IN PART AND REMANDED.

Opinion of the Court by Crothers, Justice.

Jerilynn Brantner Adams, 218 NP Avenue, P.O. Box 1389, Fargo, ND 58107-

1389, for plaintiff and appellant.

James R. Brothers, 500 2nd Avenue North, Suite 400, P.O. Box 1680, Fargo, ND 58107, for defendant and appellee.

Snyder v. Snyder

No. 20100021

Crothers, Justice.

[¶1] David Snyder appeals the district court’s judgment of divorce requiring him to pay Anne Snyder permanent spousal support and to maintain life insurance as security for the support award.  We affirm in part, reverse in part and remand.

I

[¶2] David Snyder is 56 years old, and Anne Snyder is 51 years old.  The parties married in 1976 and have two adult children together.  David Snyder has worked for Burlington Northern Santa Fe Railroad (“BNSF”) for 34 years and has a net monthly income of $5,795.  Anne Snyder has not been employed outside the home since 1982, but she has operated a home-based day care since the early 2000s, earning a small but unknown income.  The parties’ marital estate has a negative net value.  Anne Snyder has monthly expenses of $4,042.  David Snyder reported his monthly expenses as $5,454, but the district court declined to accept that value, citing the inclusion of expenses that would be extinguished upon divorce.  Instead, the district court found David Snyder’s monthly expenses to be $1,153, excluding an allowance for housing.

[¶3] Throughout his career at BNSF, David Snyder contributed to the company’s retirement program.  Under the program, three separate types of retirement benefits will be distributed: Tier I benefits, Tier II benefits and divorced spouse benefits.  Tier I benefits are non-divisible and payable to David Snyder in the amount of $2,247 per month after he reaches age 60.  Tier II benefits are divisible and will, under current calculations, amount to $1,400 per month after David Snyder reaches age 60.  Divorced spouse benefits are payable to Anne Snyder and are currently calculated at $1,123 per month, beginning June 1, 2024.

[¶4] David Snyder filed for divorce in November 2008, citing irreconcilable differences.  A hearing was held on September 30, 2009.  David Snyder testified that his current annual gross income exceeds $110,000, but that he cannot maintain this high level of income because the physical demands of his job will force him to refuse the large amounts of overtime accounting for nearly half of his annual pay.  Anne Snyder requested $2,500 a month in spousal support, acknowledging that her need for support will decrease in 15 years when her divorced spouse benefits begin.

[¶5] Addressing Anne Snyder’s request for spousal support, the district court found David Snyder had the ability to support Anne Snyder and Anne Snyder was in need of support.  The court recognized that Anne Snyder has limited post-secondary education, has no outside work experience for the previous 25 years and would likely need to again become employed.  The district court also acknowledged the parties’ marriage was significantly damaged by David Snyder’s drinking, as well as by his verbal abuse of Anne Snyder.  David Snyder was ordered to pay Anne Snyder monthly spousal support of $2,500 until June 1, 2024, at which point David Snyder’s support obligation is reduced to $1,000 per month.  Additionally, the district court ordered David Snyder to maintain a $250,000 life insurance policy with Anne Snyder the named beneficiary.  David Snyder timely filed this appeal.

II

[¶6] David Snyder argues the district court erred in the amount and duration of spousal support it awarded to Anne Snyder because the court failed to consider his upcoming retirement and the conditions of his work environment.  “A district court’s decision on spousal support is a finding of fact that will not be set aside on appeal unless it is clearly erroneous.  A finding of fact is clearly erroneous if it is induced by an erroneous view of the law, if there is no evidence to support it, or if, after a review of the entire record, we are left with a definite and firm conviction a mistake has been made.”  
Krueger v. Krueger
, 2008 ND 90, ¶ 7, 748 N.W.2d 671 (internal citations omitted).

[¶7] In divorce proceedings, a district court has authority to “require one party to pay spousal support to the other party for any period of time.”  N.D.C.C. § 14-05-

24.1.  Permanent or rehabilitative support can be ordered, but an award of permanent spousal support is generally appropriate where the receiving party’s age is likely to prevent adequate rehabilitation.  
Wold v. Wold
, 2008 ND 14, ¶ 14, 744 N.W.2d 541.  To establish the amount and duration of support, the district court must consider the 
Ruff-Fischer
 guidelines.  
Ruff v. Ruff
, 78 N.D. 775, 52 N.W.2d 107 (1952); 
Fischer v. Fischer
, 139 N.W.2d 845 (N.D. 1966).  These guidelines include:

“the respective ages of the parties, their earning ability, the duration of the marriage and conduct of the parties during the marriage, their station in life, the circumstances and necessities of each, their health and physical condition, their financial circumstances as shown by the property owned at the time, its value at the time, its income-producing capacity, if any, whether accumulated before or after the marriage, and such other matters as may be material.”

Sack v. Sack
, 2006 ND 57, ¶ 11, 711 N.W.2d 157 (quoting 
Staley v. Staley
, 2004 ND 195, ¶ 8, 688 N.W.2d 182).  Weight must also be given to the supporting party’s ability to pay and to the supported party’s need for support.  
McDowell v. McDowell
, 2001 ND 176, ¶ 13, 635 N.W.2d 139.

[¶8] Here, evidence supports the amount of support awarded to Anne Snyder.  Although David Snyder claims he cannot maintain his current level of income because his age will prevent him from working large amounts of overtime in the future, he did not present evidence on when his income will decrease or by how much it will decrease.  Without this information, evidence presented at trial indicates only that David Snyder was on track to earn over $113,000 in 2009, that Anne Snyder has little work experience and no post-secondary education, that David Snyder significantly contributed to the marital dissolution by abusing alcohol and verbally abusing Anne Snyder and that David Snyder’s high income and low living expenses permit his contribution towards Anne Snyder’s needed support.  The district court did not err in establishing the amount of spousal support awarded to Anne Snyder.

[¶9] David Snyder next argues the district court erroneously established the duration of spousal support because the order requires him to maintain his overtime-

heavy work schedule until he is 71 years old and because the scheduled reduction in 2024 is based on Anne Snyder’s retirement, not his own.  A significant problem with David Snyder’s request to reduce his support obligation upon his retirement is the uncertainty surrounding that event.  It is unknown when David Snyder will retire from BNSF and if he will have any other sources of income after retirement.  The record reflects David Snyder’s BNSF retirement benefit calculations were already stale at the time of trial, lending even more uncertainty to his speculated future income.  In similar cases, this Court has upheld permanent awards of spousal support despite the obligor’s approaching retirement because the exact dates of retirement and the resulting income reductions following retirement were unknown.  
See, e.g.
, 
Sommer v. Sommer
, 2001 ND 191, ¶ 21, 636 N.W.2d 423.  In 
Sommer
, we held the obligor’s proper course of action upon retirement was to move for modification of the support obligation, citing the significant change of circumstances caused by the retirement.  
Id.
 at ¶ 18.  The same logic applies here.

[¶10] David Snyder argues it is inappropriate to decline modifying his support obligation until his retirement because requiring him to seek modification at a later date puts him at risk of not being able to establish a material change in circumstances since his retirement was contemplated at trial.  For support, David Snyder asserts our decision in 
Ebach v. Ebach
, 2008 ND 187, ¶ 10, 757 N.W.2d 34, stands for the proposition that “[a] change contemplated at the time of the initial decree” can never constitute a material change of circumstances in the future.  David Snyder interprets 
Ebach
 too narrowly.  In 
Ebach
, the husband was ordered to provide his ex-wife with spousal support and the district court, acknowledging the husband’s approaching retirement, indicated such retirement would constitute a material change of circumstances allowing review of the support obligation at that time.  
Id.
 at ¶ 12.  When the husband approached the district court requesting termination of his support obligation in light of his approaching, and early, retirement, the district court found there had not been a material change in circumstances.  
Id.
 at ¶¶ 5-6.  We reversed and remanded to the district court, concluding the lack of findings prevented us from adequately reviewing the district court’s denial.  
Id.
 at ¶¶ 16-17.

[¶11] David Snyder also cites 
Walker v. Walker
, 2002 ND 187, ¶ 20, 653 N.W.2d 722, where we outlined our preference “that a trial court spell out preordained contingency limits on spousal support in a divorce decree rather than invite further litigation by unconditionally decreeing support for life.”  While the general premise of 
Walker
 holds true, such preordained contingencies typically trigger the termination of spousal support, not its reduction.  
See, e.g.
, 
Walker
, at ¶ 5 (eliminating husbands support obligation at his retirement or 65th birthday); 
Baker v. Baker
, 1997 ND 135, ¶ 5, 566 N.W.2d 806 (eliminating wife’s support obligation if ex-husband remarried or cohabitated in an informal marital relationship).  In cases such as this, where a contingency triggers reduction of a support obligation rather than its termination, the necessarily speculative nature of guessing when the event will occur, what the parties’ economic circumstances will be at the time the event occurs and what impacts will result from the event dampers our preference towards preordained contingency modifications.  We therefore hold in cases such as this, where substantial uncertainty surrounds a proposed contingency used to reduce a support obligation, the appropriate course of action is to allow the parties to move the district court for a modification when the anticipated event actually occurs.  Such a result is consistent with existing law.  
See
 
Sommer
, 2001 ND 191, ¶ 17, 636 N.W.2d 423 (“Therefore, in fashioning an original divorce decree, it is not necessary for a trial court to specify every contingency that would reduce spousal support.”).  Current evidence supports both the amount and the duration of David Snyder’s support obligation, and that portion of the district court’s judgment is affirmed.  
See
 
Krueger
, 2008 ND 90, ¶ 12, 748 N.W.2d 671 (awarding spousal support based on circumstances existing at trial).

III

[¶12] David Snyder argues the district court abused its discretion by ordering him to maintain a $250,000 life insurance policy as security for his support obligation.  David Snyder claims the granting of Anne Snyder’s post-trial request for security prevented him from explaining why security was unreasonable and unjustified.  He also asserts that no evidence exists indicating the cost or availability of a $250,000 life insurance policy for a 56-year-old man, and that security is not appropriate because his support obligation terminates upon his death.

[¶13] A district court “may require either party to give reasonable security for providing maintenance or making any payments required under” the terms of a divorce.  N.D.C.C. § 14-05-25.  We review requirements of security for support awards for an abuse of discretion.  
See
 
Wold
, 2008 ND 14, ¶ 19, 744 N.W.2d 541; 
Gierke v. Gierke
, 1998 ND 100, ¶ 48, 578 N.W.2d 522 (Maring, J., concurring in part and dissenting in part) (presenting the majority position on issue of security for spousal support award).  “A court abuses its discretion where it acts ‘in an arbitrary, unreasonable, or unconscionable manner.’”  
Id.
 (quotation omitted).

[¶14] David Snyder claims that he had no notice Anne Snyder was seeking security for payment of spousal support, that neither party introduced evidence of the need for, or cost of, the insurance, and that the district court did not consider the effect the insurance’s cost would have on his ability to pay spousal support.  The record supports David Snyder’s argument.  He filed the complaint in this action on November 5, 2008.  In Anne Snyder’s answer and counterclaim dated November 7, 2008, she sought a divorce from David Snyder, the equitable division of the parties’ property, an award of spousal support, costs and attorney’s fees and “other and further relief as the Court deems just and proper.”  Pretrial property disclosures established David Snyder’s ownership of three life insurance policies on himself, with face values of $25,000, $5,000 and $5,000.  At the hearing held on September 30, 2009, testimony was presented regarding the cash value of David Snyder’s insurance policies, but neither the parties nor the court raised the possibility of using life insurance to secure any imposed support obligation.  As the hearing concluded, the district court reminded the parties, “All right.  And we have agreed that we will be—you’ll be exchanging proposed Findings, and you can just send them to [the court] via e-mail.”  A deadline of October 12, 2009, was established for submission of the proposed findings, and the hearing was adjourned.

[¶15] On October 12, 2009, Anne Snyder submitted to the court a document titled “Defendant’s Written Final Argument,” which included for the first time a request for a life insurance policy securing payment of spousal support.  The record on appeal did not contain the proposed findings of fact that were requested by the district court.  The absence of those filings was contrary to our rules and required us to temporarily remand the case for supplementation of the record under N.D.R.App.P. 10(h)(2).  
See
 N.D.R.Civ.P. 5(d)(1) (requiring “all pleadings, affidavits, bonds and other papers in an action [] be filed with the clerk”).  The district court complied with our directive on remand by ordering supplementation of the record after stating, “The original e-mail messages were not saved; however, the proposed findings attached were printed and saved and are to be submitted by the Clerk of the District Court along with this order to satisfy the Order of Remand.”

[¶16] Consistent with her written final argument, Anne Snyder’s proposed conclusions of law asked the court to order David Snyder to maintain $250,000 of insurance on his life as security for the support award.  These post-trial requests are the first mention of life insurance as security for Anne Snyder’s support.  Due to the underdeveloped state of the record and the lack of proof of service, we are unable to determine when or whether Anne Snyder satisfied her obligation of serving these documents on David Snyder.  
See
 N.D.R.Civ.P. 5(a)(1)(F) (requiring “every paper filed with the clerk or submitted to the judge” to be served on every party).  We presume he was served under terms of Rule 7.1(b)(1), N.D.R.Ct.  The record reflects that on October 15, 2009, without any interceding communication to or from David Snyder, the district court entered its findings of fact, conclusions of law and order for judgment awarding Anne Snyder spousal support and requiring David Snyder to secure his support obligation by maintaining at least $250,000 of life insurance and naming Anne Snyder the beneficiary.  The two days between Anne Snyder’s submission and the court’s entry of the order is far less than the 10 days mandated by Rule 7.1(b)(1).  From this we must conclude David Snyder had no notice and no meaningful opportunity to respond to Anne Snyder’s claim that David Snyder’s spousal support obligation should be secured by life insurance.

[¶17] “The requirements of due process are flexible and vary depending upon the circumstances of each case.”  
St. Claire v. St. Claire
, 2004 ND 39, ¶ 7, 675 N.W.2d 175.  Here, the circumstances readily demonstrate David Snyder’s due process rights were seriously injured by the procedure employed by the district court.  There is no evidence Anne Snyder notified David Snyder of her request for security on her proposed award of spousal support.  Assuming for the sake of argument that Anne Snyder did notify David Snyder of her request, such notice was most likely received the same day the district court was notified, October 12, 2009.  Under this assumption, David Snyder had only two days to respond before the district court issued its judgment.  The procedure used here directly conflicts with the well-

established tenets of due process requiring notice and an opportunity to be heard.  
See
 
Schmalle v. Schmalle
, 1998 ND 201, ¶ 9, 586 N.W.2d 677 (“Due process requires a party receive adequate notice and a fair opportunity to be heard.”); 
see also
 
Harris v. Harris
, 2010 ND 45, ¶ 10, 779 N.W.2d 642 (quoting 
Meier v. Said
, 2007 ND 18, ¶ 15, 726 N.W.2d 852) (“In order to comport with due process, a fair hearing requires reasonable notice or opportunity to know of the claims of opposing parties, along with the opportunity to rebut those claims.”).

[¶18] Particularly troublesome is the absence of evidence concerning the availability or cost of a 56-year-old man obtaining at least $215,000 of life insurance ($250,000 less the coverage provided by the existing policies).  The potentially substantial cost of such insurance could have affected numerous aspects of this case, most significantly division of the parties’ property.  
See
 
Pfliger v. Pfliger
, 461 N.W.2d 432, 436 (N.D. 1990) (holding “property division and spousal support often need to be examined and dealt with together”).  We have held that requiring security for a 

spousal support obligation is only appropriate after assessing the relevant circumstances of a case.  
Gierke
, 1998 ND 100, ¶ 51, 578 N.W.2d 522.  Here, the cost of requiring David Snyder to maintain $250,000 of life insurance is unquestionably one of those circumstances.

[¶19] Several factors are considered in deciding whether to require security for a spousal support award, including “‘an award of permanent maintenance, the long duration of a marriage, [] the recipient spouse’s age and lack of marketable skills’ and an award of income producing property.”  
Gierke
, 1998 ND 100, ¶ 48, 578 N.W.2d 522 (quoting 
Walker v. Walker
, 553 N.W.2d 90, 96 (Minn. Ct. App. 1996) and citing 
Rosenberg v. Rosenberg
, 379 N.W.2d 580, 586 (Minn. Ct. App. 1985)).  An additional factor weighing in favor of requiring a spouse to maintain life insurance as security for a support obligation is the presence of an existing policy where the obligated spouse “can designate the obligee the beneficiary of the insurance proceeds.”  
Donarski v. Donarski
, 1998 ND 128, ¶ 12, 581 N.W.2d 130 (citing 
Gierke
, at ¶ 49).

[¶20] The similarity between this case and 
Gierke
 may justify the district court requiring security for David Snyder’s support obligation.  1998 ND 100, ¶ 51, 578 N.W.2d 522 (holding life insurance to secure husband’s spousal support obligation was justified “where there is a negative marital estate, the spouse is awarded no income-producing property, there is a long-term marriage, and a disadvantaged spouse who has health problems and is entering the work market at age 50”).  On the other hand, David Snyder’s spousal support obligation terminates on his death so that the life insurance policy appears to only secure payment of any arrears.

[¶21] We reverse that portion of the district court’s judgment requiring David Snyder to maintain $250,000 of life insurance as security for his spousal support obligation, concluding the district court abused its discretion by failing to provide David Snyder notice or an opportunity to be heard on the issue.  We remand to the district court with instructions to hold a hearing addressing the need to secure David Snyder’s spousal support obligation with life insurance, the availability of additional life 

insurance, the cost of additional life insurance and his ability to pay for additional life insurance.

IV

[¶22] We affirm that portion of the district court’s judgment establishing the amount and duration of David Snyder’s spousal support obligation.  We reverse and remand that portion of the district court’s judgment requiring David Snyder to maintain $250,000 of life insurance as security for his spousal support obligation.

[¶23] Daniel J. Crothers

Everett Nels Olson, S.J.

[¶24] The Honorable Everett Nels Olson, S.J., sitting in place of Kapsner, J., disqualified.

VandeWalle, Chief Justice, concurring specially.

[¶25] I concur in the result reached by the majority opinion.  I am, however, concerned that in determining the estimated living expenses of the parties, there was no allowance for housing for David Snyder although the order of the court provided that the marital home was to be sold and pending the sale of the marital home, Anne Snyder was entitled to remain in the home and David Snyder was solely liable for the monthly mortgage payments.  Estimated living expenses for Anne Snyder included $1,300 in rent, presumably to be incurred after the martial home was sold.  The trial court found:

It is difficult for the Court to determine the Plaintiff’s reasonable monthly expenses because the Plaintiff submitted an estimate of his monthly expenses which includes mortgage payments for the marital home of the parties totaling $2,601 per month and $l,700 per month in the payment of support for the Defendant when the Plaintiff argues that the marital home should be sold and that he should not have to pay spousal support to the Defendant.  Without those two items in the Plaintiff’s budget, his monthly expenses are $1,153 per month, 
without any allowance for housing
.

(Emphasis supplied).

[¶26] However, the only evidence as to David Snyder’s current housing was that he was living with friends and relatives.  Although the trial court might have included housing expenses for David Snyder comparable to what it accepted for Anne Snyder, i.e., $1,300 per month, without further evidence any amount arguably would have been speculative since David Snyder might continue to live with friends and relatives without any expense.  There simply is no evidence as to David Snyder’s housing expenses in the record and that is what I understand the trial court to mean when it specifically stated David Snyder’s reasonable monthly expenses were “without any allowance for housing.”  In any event, it is not clear that it would have made a difference in the amount of spousal support awarded if David Snyder’s estimated monthly living expenses had included a reasonable allowance for housing.

[¶27] With regard to the issue of the duration of spousal support awarded to Anne Snyder, again the lack of evidence in the record is relevant to the result.  The majority opinion distinguishes the statement that our preference is “that a trial court spell out preordained contingency limits on spousal support in a divorce decree rather than invite further litigation by unconditionally decreeing support for life” found in 
Walker v. Walker
, 2002 ND 187, ¶ 20, 653 N.W.2d 722.  The majority distinguishes 
Walker
 by the observation that it applies typically to “trigger the termination of spousal support, not its reduction.”  I suggest 
Walker
 is distinguishable because, in that case, there was evidence that James Walker, who was 63 years of age at time of trial, “expected to retire in the near future.”  
Id.
 at ¶ 18.  I continue to believe our preference to spell out preordained contingency limits on spousal support rather than invite further litigation is valid when there is evidence that the contingency limits are preordained.  Because there was no evidence in this record as to when David Snyder intended to retire or reduce his workload, the trial court could not spell out those limits.

[¶28] Finally, it is apparent from our decision that should David Snyder retire and move to reduce the spousal support because of a reduced income as a result of his retirement, Anne Snyder will not be able to argue there is no material change in circumstances as a result of that retirement because David Snyder’s retirement was contemplated at trial.

[¶29] Gerald W. VandeWalle, C.J.

Maring, Justice, concurring specially and dissenting.

[¶30] I concur specially in part II of the majority opinion, and dissent from part III, and also dissent from those provisions of part IV that reverse the trial court’s award of security for the spousal support award and remand the issue to the trial court for hearing.

[¶31] I concur in part II of the majority opinion specially because I disagree with its analysis in paragraph 11.  I agree with Chief Justice VandeWalle’s analysis of 
Walker v. Walker
, 2002 ND 187, 653 N.W.2d 722, and that “our preference to spell out preordained contingency limits on spousal support rather than invite further litigation is valid when there is evidence that the contingency limits are preordained.”

[¶32] In part III, the majority correctly recites the law applicable to an award of spousal support and reasonable security for such support payments.  Under N.D.C.C. § 14-05-24.1, a court, taking into consideration the circumstances of the parties, “may require one party to pay spousal support to the other party for any period of time.”  Under N.D.C.C. § 14-05-25, a “court may require either party to give reasonable security for providing maintenance or making any payments required under the provisions of this chapter.”  We have recognized the district court has broad discretion in both equitably dividing property and allocating spousal support to address individual needs of divorcing parties.  
Ingebretson v. Ingebretson
, 2005 ND 41, ¶ 18, 693 N.W.2d 1.  “The exercise of that judicial function is not limited by the specific requests of the parties so long as the basis for the decision can be discerned.”  
Id.

[¶33] In the present case, the court, after careful analysis of the 
Ruff-Fischer
 guidelines, awarded Anne Snyder permanent spousal support in the amount of $2,500 per month from December 2010 until June 1, 2024, at which point the support is reduced to $1,000 per month.  The amount of spousal support David Snyder owes Anne Snyder up until June 1, 2024, which is when she receives a portion of the retirement benefits, is $405,000.  In awarding spousal support, the trial court considered that Anne Snyder has little work experience and ability to earn income and that there is essentially no marital estate from which she could earn income to  use for living expenses.  The hard cold fact is that the parties’ marital estate has a negative value.  The trial court was fully advised of the parties’ current circumstances when it awarded Anne Snyder a $250,000 life insurance policy on David Snyder’s life to secure spousal support payments.  The Court reasonably concluded life insurance was better security than a claim against David Snyder’s estate.  Clearly, in the event of an untimely death for David Snyder, Anne Snyder would be left destitute after thirty-three years of marriage.  The trial court is in a much better position than this Court to assess the need for security for the spousal support payments.   I cannot conclude that the trial court’s award of security was unreasonable, arbitrary, or capricious under the facts and circumstances of this case.

[¶34] The majority also concludes that the issues must be remanded because David Snyder did not get “notice” that Anne Snyder was seeking security for spousal support.  I respectfully disagree.

[¶35] All persons are presumed to know the law and certainly an attorney knew or should have known the applicable law.  
See
 
Disciplinary Action Against Dvorak
, 2000 ND 98, ¶ 12, 611 N.W.2d 147.  Both David Snyder and his attorney knew or should have known that, under N.D.C.C. § 14-05-25, the trial court could award in its discretion security for spousal support.  Anne Snyder requested spousal support in her answer and counterclaim, at trial, and in her written final argument.  Her request for significant spousal support was no surprise.  The trial court’s discretion to award security for payment of spousal support is well-established law.  The majority is correct that the trial court asked both parties at the conclusion of the trial to “be exchanging proposed Findings” and to send them to the court via email as an attachment in WordPerfect.  I assume the parties did what the court requested, and it explains why the record does not include these “proposed findings.”  The record does include a document titled “Defendant’s Written Final Argument,” in which Anne Snyder explains why the court should make certain findings, including awarding her a life insurance policy to secure an award of spousal support.  This document is dated October 12, 2009.  The record does not include any such written final argument on behalf of David Snyder.  After remand by this Court, the trial court did supplement the record with copies of the parties’ proposed findings of fact.  Anne Snyder’s proposed findings of fact and conclusions of law did include an award of $250,000 of life insurance to secure the payment of spousal support.  Although the majority assumes these proposed findings of fact were not exchanged, we do not know that nor has David Snyder ever claimed he never received them.  The majority also “assumes for the sake of argument” that Anne Snyder notified David Snyder, but it then makes the leap to an assumption that the proposed findings of fact were served “most likely” on October 12, 2009.  The parties had from September 29, 2009 to October 12, 2009 to electronically send the court proposed findings of fact.  Yet, the majority concludes David Snyder received the proposed findings of fact on October 12, 2009.  It is true that the trial court entered its Findings of Fact, Conclusions of Law, and Order for Judgment on October 15, 2009.  However, what the majority fails to note is that the judgment was not entered until November 13, 2009, and Anne Snyder moved the court for amended findings on November 23, 2009.  A hearing was held on the motion on December 16, 2009, and David Snyder and his attorney appeared.  The trial court found good cause to amend its findings and judgment and entered the First Amended Judgment on January 8, 2010.  David Snyder never raised his objection to notice or the award of security for the spousal support awarded during any of these post-trial proceedings despite the opportunity to do so.  David Snyder did not move under Rule 52(b), N.D.R.Civ.P., to amend the findings of fact so as to either clarify or correct the trial court’s finding, nor did he move to alter or amend the judgment under Rule 59(j), N.D.R.Civ.P.  By failing to make such motions he precluded the trial court from having the opportunity to correct or clarify its findings and conclusions.  Although I recognize such motions are not mandatory before an appeal can be taken, our Court has recognized in a bench-tried matter it is better to give the trial court the opportunity to correct itself.  
See
 
McKechnie v. O’Neil
, 252 N.W.2d 875, 878 (N.D. 1977).

[¶36] For these reasons, I cannot conclude that David Snyder did not have notice and an opportunity to be heard by the trial court on the issue of discretionary security for spousal support payments.

[¶37] I would affirm the judgment.

[¶38] Mary Muehlen Maring

Sandstrom, Justice, concurring and dissenting.

[¶39] I agree retirement is a material change in circumstances.

[¶40] I also agree that insurance for spousal support payments needed to be raised during trial and the record developed.

[¶41] Sometimes it can be unjust to structure divorce decisions on continuing past practices of the parties.  If one spouse is a spender and the other is frugal, if one works overtime and one works little, it can be unjust to say the spender should be rewarded and the frugal person punished, the hard worker punished and the person working part time or not at all rewarded.

[¶42] David Snyder testified he filed for divorce because Anne Snyder was continually spending beyond their means even as he worked long hours of overtime trying to try to make ends meet, and he “couldn’t afford it anymore.”  When he was excluded from the home, he became homeless because he knew they could not continue to pay for both the house and a separate residence for him.  He has no car because he knew they could not afford two.  She testified she could not work outside the home because the dog could not be left home alone.  So the district court premised the divorce judgment on his remaining homeless and imposing on friends for rides, on his working overtime and her not working outside the home, and on her having funds to continue spending as she spent during the marriage.

[¶43] David Snyder couldn’t afford to stay married, and now he can’t afford to be divorced.  Common sense and justice demand more.

[¶44] Dale V. Sandstrom